No. 81-134

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

IN RE THE MARRIAGE OF

DALE ELLYS LANCE,

Petitioner and Respondent,

-vs-

JOHN FESLER LANCE,

Respondent and Appellant.

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula, The Honorable
James B. Wheelis, Judge presiding.

Counsel of Record:

For Appellant:

E. Eugene Atherton, Kalispell, Montana

For Respondent:

Ferguson & Mitchell, Missoula, Montana

Submitted on Briefs: September 14, 1981

Decided: October 30, 1981

Filed: OCT 30 1981

*Thomas J. Kearney*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appeal is from an order of the District Court, Fourth Judicial District, Missoula County, dated December 31, 1980, denying motions by John Fesler Lance to set aside the decree of dissolution as to the property division, and for an account by Dale Ellys Lance.

We affirm the District Court.

Dale Ellys Lance (now Willavize) filed a petition for dissolution of her marriage to John Fesler Lance in the District Court. On March 6, 1979, John Lance was personally served with a petition. On March 29, 1979, his default was entered for failure to answer or otherwise appear in the action.

On that date, a decree of dissolution was granted. On April 26, 1979, supplemental findings of fact were adopted by the court and also on that date, a final decree of dissolution was entered granting custody of the children to Dale and the property out of the marital estate.

In the next several months, a flurry of motions were filed in the District Court by John and Dale, none of which attacked the validity or status of the decree of dissolution, but concerned issues relating to his compliance with the provisions of the decree. On August 9, 1979, the District Court ruled on several of these motions. An order followed on August 13, 1979. No motion to vacate or modify the August 9, 1979 ruling was filed by John, nor was an appeal taken therefrom.

The succeeding filings in the District Court included motions, countermotions, proceedings for contempt (John was eventually jailed for contempt), and disputes with counsel. On October 31, 1980, about 1 1/2 years after the entry of

the divorce decree, a hearing was had on motions presented by John, acting without counsel, to reopen the divorce decree, and to obtain an accounting from Dale with respect to her handling of various items of his personal property which had been in her care and custody. After the December 15, 1980 hearing, the District Court issued findings of fact and conclusions, and therewith denied both of John's motions, resulting in the January 2, 1981 order which is here appealed.

The District Court determined, in examining John's motion to reopen the default judgment, that it was not timely filed under Rule 60(b), M.R.Civ.P., and therefore treated the motion as one asking to reopen the judgment on the ground of fraud upon the court. The court then denied the motion to set aside the final decree upon the ground of fraud. The court also in the same order determined that John had granted to Dale by gift all personal property remaining to him after the entry of the final decree and that he was not entitled to an accounting thereof.

The issues raised by John on this appeal follow:

1. The District Court erred in entering John's default without first giving notice of intention to enter default.

2. The District Court erred in failing to determine the net worth of the parties prior to distribution of the marital estate.

3. In dividing the marital property, the District Court erred in failing to determine the value of each asset within the group being divided.

4. The District Court erred in awarding custody of minor children to Dale without inquiring into the best interests of the children.

5. The District Court erred in unfairly restricting visitation rights.

-3-

6. The District Court erred in granting Dale spousal maintenance.

7. The District Court erred in allowing attorney fees subsequent to the hearing of August 9, 1979.

8. The District Court erred in determining that John had transferred his property by gift to Dale.

However, we find the overriding issue, upon the determination of which all else contended for by John depends, is whether the District Court properly refused to reopen the default judgment.

It is obvious that John's motion to reopen the decree, filed 1 1/2 years after the decree had been entered, is not timely as a 60-day motion under Rule 60(b), M.R.Civ.P. There are no time limits, however, to such a motion if, in essence, the motion is one to reopen or vacate a judgment because of fraud upon the court. Hopper v. Hopper (1979), ___ Mont. ____, 601 P.2d 29, 33, 36 St.Rep. 1695, 1701; Selway v. Burns (1967), 150 Mont. 1, 10, 429 P.2d 640, 645. However the fraud, to constitute grounds for reopening the decree must be extrinsic, that is, it must be such fraud as denied the adversary an opportunity to have a trial or to fully present his side of the case. Hopper, supra; Miller v. Miller (1980), ___ Mont. ___, 616 P.2d 313, 318, 37 St.Rep. 1523, 1528; Deich v. Deich (1958), 136 Mont. 566, 580, 323 P.2d 35, 43.

Intrinsic fraud upon the court, that is representations or concealments made during the court proceedings, assuming they are false or fraudulent, are nevertheless not grounds for reopening a decree or judgment. Miller, 616 P.2d at 319.

-4-

With respect to alleged fraud, John contends that Dale, appearing at the hearing for the decree of dissolution, in the absence of John, gave the only testimony in the case. She used, it is contended, a personal financial statement of the parties that was four or five months old; that while she supported values from the financial statement in respect to certain other properties of the marital estate, with respect to the Nighthawk Ranch, owned by the parties, she gave her opinion to the court that the ranch had a value of $400,000. John contends that District Court, in relying upon this figure, which John contends is exaggerated, made a distribution of property to Dale out of proportion to the true value of the assets of the marital estate.

On this line of attack, to reopen the property settlement provisions in the decree, John must fail. The fraud, if it be construed to be fraud, was intrinsic, not extrinsic. Nothing about the actions of Dale in filing her petition, serving the same upon John, and presenting her evidence to the District Court after default had been entered, prevented John in anyway from contradicting her evidence or from having his day in court. He chose instead not to appear in the action and in the absence of extrinsic fraud, that choice binds him now to the decree that was entered. The District Court properly refused to reopen the final decree as to the property division.

When it is considered therefore that the decree of dissolution has become final, and is now impervious to John's attack upon the ground of fraud, most of the other issues raised by John in this appeal, being but roundabout attacks on the provisions of the decree itself, fade to nothingness. It is too late now for him to attack the decree on the ground that the District Court had failed to determine the net worth of the parties, or abused its discretion

-5-

in failing to determine the value of each asset, or committed error in awarding custody of the minor children, or in setting forth visitation rights, or in granting spousal maintenance. John not having appealed from the final decree in timely fashion, the decree has become conclusive as to all issues raised by the pleadings actually litigated and adjudged as shown on the face of the decree and necessarily determined in order to reach the conclusion announced. Meagher Cty. Newlan Creek Water Dist. v. Walter (1976), 169 Mont. 358, 362, 547 P.2d 850, 853; Missoula Light & Water Co. v. Hughes (1938), 106 Mont. 355, 366, 77 P.2d 1041, 1047.

In like manner, John's attack upon the allowance of attorneys fees subsequent to the hearing of August 9, 1979 is not within our power of review, since that provision of the District Court is not within the order filed January 2, 1981, which is appealed from here.

John, however, contends that the default decree should be set aside because it was entered by the District Court without John being first given notice of intention to enter the default.

John relies upon Rule 55(b), M.R.Civ.P. which states that if a party against whom judgment by default is sought has appeared in the action, he shall be served with written notice of the application for judgment at least 3 days prior to the hearing.

John contends that he was entitled to such notice here because after he was served with the petition and summons on March 6, 1979, and on that date he wrote a letter to the District Court judge and a second letter to the District Court on March 15, 1979. At the hearing to set aside the decree, the district judge indicated that he did not read such letters, nor open them because he follows the policy of

not engaging in correspondence or reading correspondence coming to him from litigants in a cause before him. The letters themselves were not served upon counsel for the petitioner, nor upon Dale, and no appearance fee of any kind was paid in connection with the letters. John contends that one or both of the letters can be deemed "an appearance," in which event the provisions in Rule 55(b) would apply.

The party served with a summons and complaint or petition must within 20 days file a responsive pleading or motion in the court where the action is pending. Rule 12(a), (b), M.R.Civ.P. The purpose of the rule requiring responsive pleadings is to enable the court to define the issues, to have the issues litigated and decided, and to assure finality as to the issues decided in any judgment entered. Private writings to a district judge, not filed with the clerk of the court, and not served upon adverse parties or their counsel do not constitute "an appearance" which may forestall the entry of a default. Rule 55(a), M.R.Civ.P. requires the clerk of the court to enter the default of a party who has failed to plead or otherwise defend "as provided by these rules." The three-day notice provision is applicable only if judgment by default is sought against the person who has appeared "in the action." Rule 55(b)(2), M.R.Civ.P. Stated simply, John did not "appear" in this action to oppose his wife's petition for dissolution. He was not entitled to a three-day notice.

The second part of John's appeal is to that portion of the order filed January 2, 1981, determining that John had given to Dale "all personal property remaining to him after the entry of the final decree . . ."

In his appeal brief, John admits that he made several communications to the trial judge, his former wife and to

her attorney that if the decree of dissolution is binding, he would leave to his wife and children all of his property other than his clothing and personal effects. The District Court ruled that John had in fact made a gift of his personal property to Dale, but not his interest in the marital real estate.

John now contends that it is obvious that when he made the various representations of gifts to his wife and children, it was because he could not live up to or abide by the terms of the final decree and that his subsequent actions in not complying with the terms of the decree of dissolution with respect to the award of the marital assets demonstrated his unwillingness or lack of donative intent to transfer the personal property to Dale.

A gift is complete when the donor has an irrevocable intention to give; delivery, actual or implied, occurs which evidences the intent; and there is acceptance by the donee. Patterson v. Halterman (1973), 161 Mont. 278, 282, 505 P.2d 905, 907. The intention may be defeated if there is fraud, duress, undue influence or mental incapacity. Patterson, supra, at 908; Cameron v. Cameron (1978), ___ Mont. ___, 587 P.2d 939, 945, 35 St.Rep. 1723, 1730.

In this case John, among other actions indicating his intent to make a grant of his property to his former wife, delivered an informal writing subscribed by him and witnessed by two individuals giving his portion of the property, jointly owned with his former wife, to her. Upon that instrument, she took possession of the property. Some of the personal property would have been abandoned and lost had she not taken steps to preserve the property upon the donative intention expressed by John. The findings of a trial court

with respect to facts and issue may not be set aside by this Court unless the findings are clearly erroneous. Rule 52(a), M.R.Civ.P. We have no basis in the record in this case to determine that the District Court was clearly erroneous in finding that John had indeed made a gift of his personal property to his wife. Because of that, he was not entitled to an accounting of that property at a later time and his motion for accounting was properly denied by the District Court.

Before closing, we must observe that John has brought a good deal of difficulty upon himself, his former wife, and their children by his actions throughout this proceeding. He chose not to consult an attorney, although he was advised to do so to dispute the petition for dissolution, if that was his intention; when he did retain counsel, he had disagreements with such counsel and has had an on-again off-again relationship with several counsel in this matter; his attempts to handle his own case and to proceed without counsel were inept and undoubtedly tried the patience of the district judge, who withal protected John as far as possible from his ineptness; he wrote a maze of correspondence and documents, villifying the district judge, threatening kidnapping, and attacking the character of his former wife; his actions in defiance of the orders of the District Court were contemptuous, and in fact he found himself jailed for contempt. All of this has resulted in no benefit to himself and probably great detriment to the happiness and welfare of his former wife and their children and to the value of the marital estate. It is time for John to recognize that he has come to the end of the string, that his marriage to Dale is finally terminated and that for the good of his children it is time to take some

new directions.

The judgment of the District Court is affirmed.

_____
                Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
            Justices

Mr. Justice Daniel J. Shea specially concurring:

I join in the result reached by the majority but not in all that is said. Much of what is stated has nothing to do with the issues we have been asked to decide. Because we have not reached the merits of the property division, but rather have decided that Mr. Lance did not protect his interest by proper appearance in court to contest the wife's demands and what the trial court ultimately granted, we need not go beyond that record to properly dispose of the appeal.

_____
                Justice